DECISION
This is an appeal from an October 20, 2000 decision of the Town of South Kingstown Planning Board of Appeal (a/k/a the Zoning Board of Review) ("Board"). Natalie Cornish, in her capacity as Executrix of the estate of Nathaniel C. Peckham ("Appellant") seek reversal of the Board's decision granting North Colony Realty, LLC., Suffolk Realty, LLC., and Green Tree Realty, LLC. ("Applicants") a special-use permit to construct a 151 unit dwelling facility known as the Village at South County Commons. This Court possesses jurisdiction pursuant to G.L. 1956 §45-24-69.
 Facts/Travel
The property, known as the Village at South County Commons, is located on Tower Hill Road (U.S. Route 1), Wakefield, Rhode Island, and is more specifically described as Tax Assessor's Plat 42, Lots 14-19 and Tax Assessor's Plat 50, Lots 1, 4-13. Applicants filed an application for a special-use permit for construction of dwellings as a Special Impact Development in accordance with § 1102 of the South Kingstown Zoning Ordinance, titled "Development Pacing and Phasing." The proposed structure would consist of 151 dwelling units, including 24 A2 one bedroom apartment units, 96 two bedroom apartment units and 31 two bedroom independent living units.
Pursuant to the Zoning Enabling Act of 1991 and the Zoning Ordinances of the Town of South Kingstown, the Board commenced public hearings on the application on September 20, 2000. The hearing was continued to subsequent dates with testimony being heard by the Board over the course of five days: 9/20, 9/28, 10/2, 10/12 and 10/18. During the course of these five hearings, the Board heard testimony from both sides concerning the impact this project would have on critical Town of South Kingstown ("Town") resources. Various persons testified at the hearing. On September 20, Dennis DiPrete, the project engineer, testified before the Board and explained what went into planning and designing this project. Next the Board heard from Anthony Lachowicz, the Director of Planning, who indicated, when asked questions regarding the building permit cap, that the school capacity is the only issue the Board needs to consider for this application. (See Hearing Tr. 9/20 at 5.) On that same day, the Board also heard from Robert Koch, an architect for the project, who outlined the project's aim to attract the mature single adult market.
On September 28, 2000, Andy Kushner, President of Spinnaker Group explained and submitted copies of the six studies he conducted regarding the impact of this development on the Town. The opponents of the application presented one expert to testify before the Board. Marshall Feldman gave an overview of his evaluation of and an explanation of the method used by the Spinnaker Group to conduct one of its studies. Feldman also gave a slide presentation regarding State Aid and what formulas in computing that aid were not used by the Spinnaker Group in its report.
On October 2, Anthony Lachowicz again testified before the Board. At this hearing, the Director of Planning submitted a memorandum regarding the Special Impact Development and explained that memorandum in detail. He further recommended that the Board grant the special-use permit with three conditions: 1) limited to the 151 units; 2) no apartment shall be converted to accommodate three or more bedrooms; and 3) the 31 proposed 2-bedroom independent living units shall be restricted to occupancy by age 55 or older. (See Planning Bd. Ltr. at 5).
At the October 12th hearing, George Lovesky, the Tax Assessor for the Town of South Kingstown, testified at the Board's request. He informed the Board that his projected tax assessment figures used a measure of $60 and $80 per square foot. Jack Harrington, the South Kingstown School Superintendent, also spoke before the Board at its request. He informed the Board that seats are available in the school district, and student growth has in fact slowed down. Harrington further commented that this project would have a minimal impact on the schools. (See Hearing Tr. 10/12 at 2.) Following the Superintendent, Dennis DiPrete again testified before the Board. At this hearing he relayed information gathered in studying other issues impacting this development including water problems, sewer capacity and roads. During these five hearings the Board also listened to several Town residents expressing both support and concern for the project and its proposed impact.
At the conclusion of the hearings on October 18, 2000, the Board voted 5-0 in favor of granting Applicants' special-use permit and read its decision into the record. The Board further placed conditions on this approval by requiring applicants to fulfill seven conditions or otherwise find themselves in violation of the special-use grant. On October 20, 2000 the Board issued a written decision, enumerating its findings. The Appellant filed this timely appeal.
On appeal, Appellant asserts three arguments: that the Board misapplied the applicable zoning ordinance; that the Applicants' expert was not qualified in the area of community planning; and that members of the South Kingstown Planning Board acted inappropriately as advocates in support of the application at the public hearings.
 Standard of Review
Rhode Island General Law § 45-24-69(d) sets forth the standard of review employed by this Court for its appellate consideration of the Board's Decision:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of finding, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The function of a trial justice, upon review of a zoning board decision, is not to substitute his or her judgment for that of the zoning board. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985). Rather, a trial justice must inspect the entire certified record "to determine whether substantial evidence exists to support the board's findings." Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (quoting DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). Substantial evidence is such relevant evidence that a reasonable person might accept as sufficient to support a conclusion and refers to an amount greater than a scintilla but less than a preponderance. See Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 388 A.2d 821, 825 (R.I. 1978)). If the trial justice determines that the decision is supported by substantial evidence contained within the record, the decision of the zoning board must be upheld. See Mendonsa, 495 A.2d at 260.
 Standing
A citizen acquires status of an aggrieved party when a property, of which he or she is the owner, is devoted to use that would be naturally affected adversely by a decision granting an exception or variance applicable to the land of another. See D'Almeida v. Sheldon Realty Co.,252 A.2d 23 (R.I. 1969). Further, a party to a cause of action must be aggrieved to ensure "concrete adverseness" between the parties. Blackstone Valley Chamber of Commerce v. Public Utilities Com'n.,452 A.2d 931, 932-33 (R.I. 1982). Standing to challenge a zoning board of review's decision is not bestowed upon a citizen merely from that person's status as a town resident or taxpayer. See Town of Coventry v. Hickory Ride Campground, Inc., 337 A.2d 233, 234 (R.I. 1975). In addition, it is well-settled that parties with only generalized grievances or interests, which are held in common by all members of the public, lack standing. See Schlesinger v. Reservist to Stop the War,418 U.S. 208, 220 (1974).
Appellees assert that the majority of the Appellants have not demonstrated that their property will be injured by the decision of the Board and therefore, are not aggrieved parties under the statute. In the instant case, only one of the appellants required written notice of the Zoning Board's action under the Zoning Enabling Act of 1991 or under the South Kingstown Zoning Ordinance. See G.L. 1956 § 45-24-53(c)(2) (dictating that written notice be sent to all property owners within two hundred feet of the proposed project); see also Town of South Kingstown Zoning Ordinance, art. IX, § 906(L)(2)(b) (requiring similar notice as mandated by the Zoning Enabling Act of 1991). Based on the record before the Board, only Natalie Cornish, in her capacity as Executrix of the Estate of Nathaniel C. Peckham, possessed the requisite standing to appeal the decision of the Board. This Court will now consider the Appellant's remaining arguments.
 Special-use Permit
Section 45-24-42 of the Rhode Island General Laws outlines the necessary requirements for issuing a special-use permit. A zoning board of review has the authority to grant such a permit when the petitioner satisfies the standards for a special-use permit set forth in the town's zoning ordinance. Monforte v. Zoning Bd. of East Providence, 176 A.2d 726
(R.I. 1962). When the determination of use by special exception is left to the zoning board, "it is a condition precedent to the exercise of the board's jurisdiction that a grant of the use sought must be found by said board not inimical to the public health, safety, morals and welfare." Nani v. Zoning Board of Review of the Town of Smithfield, 242 A.2d 403, 406 (R.I. 1968). If the applicant fails to present adequate competent evidence to prove that a zoning ordinance's standard for issuing a special-use permit has been met, the zoning board must deny the application. See Dean v. Zoning Bd. of Review of Warwick, 390 A.2d 382
(R.I. 1978).
Specifically, article 9, § 907(A)(2) of the South Kingstown Zoning Ordinance provides:
 "Special-use Permit — In granting a special-use permit, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (a) that the special-use is specifically authorized by this Ordinance, and setting forth the exact subsection of this Ordinance containing the jurisdictional authorization;
 (b) that the special-use meets all of the criteria set forth in the subsection of this Ordinance authorizing such special-use; and
 (c) that the granting of the special-use permit will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town. In doing so, the Board shall consider, whether or not satisfactory provisions and arrangements have been or will be made concerning, but not limited to the following matters, where applicable:
 (i) Ingress and egress to the lot and to existing or proposed structure thereon with particular reference to automotive and pedestrian safety and convenience, traffic flow and control, and access in case of fire, emergency or catastrophe;
 (ii) Off-street parking and loading areas where required, with particular attention to the items in (A) above, and the noise, glare or odor effects of the special-use permit on adjoining lots;
 (iii) Trash, storage and delivery areas with a particular reference to the items in (i) and (ii) above;
 (iv) Utilities, with reference to locations, availability and compatibility;
 (v) Screening and buffering with reference to type, dimensions and character;
 (vi) Signs, if any, and exterior lighting with reference to glare, traffic safety, and compatibility and harmony with lots in the zoning district;
 (vii) Required yards and other open space;
 (viii) General compatibility with lots in the same or abutting Zoning Districts."
On appeal, Appellant argues that the Board misapplied the appropriate zoning ordinance. Appellant claims that specific language in § 1102.9(B) requires the zoning board to consider the impact a proposed development would have on the town "including but not limited to educational facilities and services." According to Appellant, the Board gave weight only to "testimony showing impact on the number of children that would theoretically result from the proposed construction." (Appellant's Brief at 2.) Appellant asserts the Board, in addition to the impact on educational facilities, also should have considered the impact his project would have on vital Town operations, such as police, fire and traffic. Since the Board only considered educational issues, per the advice of the Board's Special Legal Counsel, Appellant contends the Board made its decision in contravention to explicit dictates of the applicable Town ordinance. (Appellant's Brief at 3.) Appellant asserts this incorrect assessment led to an inappropriate granting of a special-use permit to the Applicants.
Section 1102.9 of Article 11 of the South Kingstown Zoning Ordinance — Special Impact Developments — states:
 "Application for construction of dwellings shall qualify as an exemption under § 1102.5[1] if the Zoning Board of Review grants a special-use permit as a Special Impact Development for construction of dwellings having no or very limited impacts on critical Town capacities in accordance with the following:
 A. Prerequisites — To be eligible for such special-use permit, a dwelling must be:
 4. Proposed to be constructed within the Route 1 Special Management District (SMD) and which has received Conceptual Master Plan approval by the Planning Board under the applicable provisions of the Zoning Ordinance and/or Subdivision and Land Development Regulations. The Planning Board shall make an advisory recommendations [sic] to the Zoning Board on any such application for development within the SMD.
 B. Criteria — In granting a special-use permit under these provisions, the Zoning Board of Review shall first determine that the proposed dwelling units are demonstrated to have no or very limited impacts on those Town capacities which most severely limit sustainable and serviceable growth, including but not limited to educational facilities and service. For example, accessory apartments, accessory family dwelling units, or mobile or manufactured homes might meet this criterion because of having limited size and number of rooms, or having publicly enforceable deed restrictions regulating their occupancy characteristics, thus having no potential school-aged residents impacting public schools."
In accordance with § 1102.9, the Planning Board submitted its recommendation to the Board on September 7, 2000. The subject property was found to be within the Route 1 Special Management District and received Conceptual Master Plan approval. (Board Decision at 3.) In its letter to the Board, the Planning Board, through its director Anthony Lachowicz, reminded the Board that it "must find that the proposed residential development will have no or very limited impact on critical Town capacities." (Planning Board Letter at 1.) In its assessment of the proposed project, the Planning Board consulted numerous handbooks and reports and made comparisons of similar existing dwellings to highlight the methodology for computing the number of school aged children to be generated as a result of this project. The Planning Board further relied on a financial analysis of the project completed by the Town Manager. In recommending approval of this project, the Planning Board Director warned that "[e]ven if the apartment development represents a positive net fiscal gain for the Town, the public school system must absorb the expected school enrollments generated by the proposed development." (Planning Bd. Ltr. at 5). This led to the Town's Special Counsel's instruction that the main impact to be considered by the Board was that upon the Town's school system.
Furthermore, while a positive recommendation was given, the Planning Board requested three conditions be imposed upon the granting of the special-use permit. Section 907(B) of the South Kingstown Zoning Ordinance, entitled Special Conditions, states:
 "In granting a variance or special-use permit, or in making any determination upon which it is required to pass after public hearing under this Ordinance, the Board may apply such special conditions that may, in the opinion of the Board, be required to promote the intent and purposes of the Comprehensive Plan of the Town and this Ordinance. Failure to abide by any special conditions attached to a grant shall constitute a zoning violation. Such special conditions shall be based on competent credible evidence on the record, be incorporated into the decision. . . ."
The Board incorporated the three Planning Board conditions into its approval which contained a total of seven (7) conditions which must be satisfied in order for the Applicants to gain approval for its requested special-use permit. Those seven conditions of approval are
 "1. Approval as a Special Impact Development shall be limited to the 120 market-rate apartments and 31 two-bedroom independent living units within the residential care facility included in the Village at South County Commons. The cumulative impact on public school enrollments from planned residential development within the Village of South County Commons and that portion of the applicants' property designated for future development shall be considered in any future application for a special use permit for a Special Impact Development.
 2. The apartments shall be built in substantial conformance with the floor plans approved by the Planning Board as part of the Village at South County Commons and the specified design and bedroom mix discussed on the record of this Board and the Planning Board.
 3. No market-rate apartment units shall be converted to accommodate three or more bedrooms.
 4. The 31 proposed two-bedroom independent living units shall be restricted to occupancy by persons age 55 or older and a legally enforceable covenant shall be granted to the Town to ensure such restriction.
 5. Certificates of Occupancy shall not be granted for the market-rate apartments until the Town's new middle school has been opened, which date is currently set for September 2001.
 6. The first building to be built in conjunction with the market-rate apartments shall be the clubhouse/recreational facility and no Certificate of Occupancy shall issue for any market-rate apartment until a Certificate of Occupancy has been issued for the clubhouse/recreational facility.
 7. The applicant and his affiliates or assignees shall not apply for any subsidy or take any other action which would change the nature of the apartments from "market-rate" to subsidized housing and no playgrounds or other amenities designed to attract residents with children may be constructed on the property."
Contrary to Appellant's assertions, the record demonstrated that evidence was submitted to the Board regarding the development's impact on other Town capacities. From the record, it can be determined that these studies indicated there would be little to no impact on these capacities, Furthermore, it is evident from its five page decision and five public hearings that the Board considered the educational impact, as well as the impact of other critical Town capacities that would be placed on the Town if the Applicants' special-use permit was granted. Accordingly, the Board did not misapply the provisions of § 1102.9 in granting a special-use permit to the Applicants, and its decision did not violate Town Ordinance provisions. The record evidences the Applicants met their burden of showing the proposed use would not be inimical to the public health, safety, morals and welfare.
In their second argument, Appellant contends that the Applicants' testifying expert, Andy Kushner of the Spinnaker Group, was not qualified to submit expert information and opinion on the subject of community planning since he had neither education nor experience in the subject on which he testified. Appellant claims that Mr. Kushner's "incompetent conclusions were based on his own unscientific, untested and professional unrecognized standards." (Appellant's Brief at 3.) In addition, the Appellant asserts that because the decision of the Board was based, in part, on unqualified expert opinion, the decision by the Board should be reversed.
If a zoning board of review is presented with competent expert testimony supporting a petition, contradicted only by lay testimony, the board must grant the applicant's petition. To do otherwise would be deemed to be arbitrary and capricious. See Goldstein v. Zoning Bd. of Review of Warwick, 227 A.2d 195 (R.I. 1967). A zoning board, however, is not required to accept expert testimony if there is competent evidence of record that controverts the expert's opinion. See Restivo v. Lynch,707 A.2d 663 (R.I. 1998). "[T]here is no talismanic significance to expert testimony. It may be accepted or rejected by the trier of fact." Id. at 671 (citing Kyle v. Pawtucket Redevelopment Agency, 262 A.2d 636, 638 (R.I. 1970)). In the instant case, the Board heard not only from Mr. Kushner, but also from several other experts working on the project who supported the granting of the Applicants' special-use permit. Robert Koch, an architect, testified as to how this project will have a greater appeal to mature single adults and double income families with no children. (Board Decision at 2). In addition, the Board heard from the Director of the Planning Board who indicated the most significant impact would be on the Town's educational facilities and also from the Town Superintendent who testified that the proposed special-use permit would not burden the Town's education system.
Moreover, in Rhode Island, it is well settled that "the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980). While many residents expressed concern about the project's impact on critical Town capacities, the lone dissenting expert was Marshall Feldman, a professor of economics of house development at URI, who was qualified before the Board as an Urban Planner and an expert in Community Planning. (Hearing Tr. 9/28 at 4.) Feldman evaluated one Spinnaker Report entitled "Community Impact Statement for South County Commons" and explained what variables he believed were not taken into account when the Spinnaker Group compiled its report. Feldman, however, neither conducted a study nor generated data of his own with respect to the impact this project would have on the Town. Based upon the vast amount of credible, competent evidence before it, the Board did not act arbitrarily or capriciously in granting the Applicant's special-use permit.
Lastly, Appellant argues that members of the South Kingstown Planning Board inappropriately acted as advocates in support of the proposed project. Appellant claims that members of the Planning Board, in testifying as private citizens, exceeded their authority by acting as advocates in favor of the project. Appellant urges that by permitting the testimony of the Planning Board members, the zoning board's decision is made upon an unlawful process and should be reversed.
The actions by the Board in allowing Planning Board members to testify in their personal capacity as citizens was appropriate under the mandates of public hearing procedure. Members of the Planning Board, like other private citizens of the Town, were permitted to express their view of the proposed project to the Board. However, as with other Town residents permitted to testify, the Board did not take the testimony of the individual Planning Board members into consideration when making its decision. The Board's decision references the specific factors which it took into account in making its determination, none of which include the testimony of the individual Planning Board members. (Board Decision at 2-3.)
 Conclusion
After reviewing the entire record, including memoranda, exhibits and transcripts, this Court finds that the Board had reliable, probative and substantial evidence before it to grant the special-use permit to the applicants. The Board's decision was not in violation of ordinance provisions, arbitrary or capricious, or affected by error of law. Furthermore, substantial rights of the petitioners have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Article 11, § 1102.5 defines which dwelling units are exempt from the Town's quota provisions:
 "The following types of dwellings shall not be subject to the provisions of this Article with regard to the 24-month or current quarterly quota. These dwellings have been determined to have no or minimal impact upon Town capacities or provide positive benefits to the Town which are consistent with the Comprehensive Community Plan.
 The Building Official shall accept applications for construction of the dwellings listed below and shall act upon them without regard to the quotas, priority determination and procedures as set forth in this Article. All such permits issued shall be considered to be issued in addition to the 24-month or quarterly quota provisions of this Article and shall not be counted when determining the current quarterly quota during periods or rapid Town growth. Complete applications for construction of dwelling units so authorized shall be granted permits within the time limits prescribed in the Rhode Island State Building Code, regardless of the availability of permits within the 24-month or current quarterly quota. . . .
 C. Special Impact Development — Dwellings having first received a special-use permit from the Zoning Board of Review as a Special Impact Development under the provisions of Section 1102.9, on the grounds that it will have no or very limited impact on critical Town capacities."