DECISION
This case is before the court for a decision on an appeal from a February 5, 2001 decision of the Zoning Board of Review for the Town of North Providence. At the time, the Zoning Board was presiding over an appeal from a decision of the local zoning enforcement officer. The Board sits in this capacity pursuant to Article 10 § 1001 A of the Town of North Providence Zoning Ordinance.
 Facts/Travel 
In 1999, the plaintiff entered into a purchase and sale agreement with the owners of property in North Providence, Rhode Island. The property is designated as Lots 581, 582, 583 584 on the tax assessor's plat 2. Located somewhere on these lots are two multifamily dwelling structures.[1] The structures have mailing addresses of 154-156 Obed Avenue. Lot 581 is 4700 square feet. Lots 582, 583 and 584 are each 5,000 square feet. The property lies in the Residence General zoning district and the lots therefore are substandard lots of record. North Providence ZoningOrdinance, § 204. Multifamily dwellings and apartments are permitted uses in the district but the minimum lot size is 20,000 square feet.North Providence Zoning Ordinance, § 204. The Ordinance's merger provisions are clearly implicated but the record does not reveal whether the City deems the 4 substandard lots to have merged into 2 lots — one for each building — or whether it deems them to have merged into one large lot. Nor does the record reveal where on these 4 lots the two structures are situated and whether they meet the Ordinance's front, back or side yard requirements. In a post briefing telephone conference, counsel for plaintiff and defendant agreed and stipulated that the lots are deemed merged into a single lot containing 19, 700 square feet. As such, the subject lot is only slightly undersized but, nonetheless, is still substandard and therefore non-conforming by dimension.
For apartment dwelling units, the Ordinance requires 10,000 square feet for the first 4-room, 1100 s.f. unit and 2000 square feet for each 4-room, 1100 s.f. unit thereafter. North Providence Zoning Ordinance,
§ 204. The structure having the mailing address of 154 Obed Avenue contains 12 apartment units. The structure having the mailing address of 156 Obed Avenue contains 6 apartment units. So, although the record does not disclose size of the existing apartments or the extent to which the structures are non-conforming, they clearly must be so. Nineteen thousand seven hundred (19,700) square feet is not quite enough for six 800 square foot efficiency units and does not come close to supporting 18 apartment units. The use to which the property presently is put, then, is a permitted use but one that is non-conforming as to dimension. NorthProvidence Zoning Ordinance, §§ 204A, 404, 405. And, any change in use must conform to the use regulations of the zoning district. NorthProvidence Zoning Ordinance, § 409G.
On December 23, 1999, the plaintiff made a request to the zoning enforcement officer for the Town of North Providence for a Zoning Certificate that would confirm plaintiff's right to lease apartment units to the mentally handicapped. A Zoning Certificate is, by definition, a document signed by the zoning enforcement officer which acknowledges that a use, structure, building or lot either complies with or is legally non-conforming to the provisions of the zoning ordinance or is an authorized variance, special use permit or modification therefrom. NorthProvidence Zoning Ordinance, Art. XIII, Definitions. A Zoning Certificate, however, vests no rights under the ordinance's Article VIII vesting provisions. North Providence Zoning Ordinance, § 801. Article IX, § 902 of the Ordinance specifically limits the zoning enforcement officer's authority to provide information and issue zoning certificates for the purpose of providing clarification and guidance only.[2] NorthProvidence Zoning Ordinance, § 902.
The plaintiff's request for a Zoning Certificate was clearly generated, in part, by the plaintiff's concern that the proposed use of the premises might be perceived to be a Community Residence and, therefore, would be subject to the Ordinance's limitation on the number of occupant-participants. G.L. 1956 § 45-24-31 (15) and the North Providence Zoning Ordinance define "Community Residence" identically. G.L. 1956 § 45-24-31 (15); North Providence Zoning Ordinance, Art.XIII, Definitions. Under the Ordinance, Community Residences are permitted in the district. North Providence Zoning Ordinance, § 203. However, both G.L. 1956 § 45-24-31 (15) and the Ordinance limit their size to a maximum of 8 occupant-participants. By definition, Community Residences include but are not limited to structures housing 6 or fewer retarded children or adults in facilities licensed pursuant to Chapter 24 Title 40.1 of the General Laws and to group homes providing care or supervision to not more than 8 mentally or physically disabled or handicapped individuals in facilities licensed pursuant to Chapter 24 Title 40.1 of the General Laws.[3] With a potential for 18 leased apartment units, plaintiff's reasons for seeking a determination that its project would not be subject to the patient-occupant limitations imposed upon Community Residences are obvious.
So, too, plaintiff's request for a Zoning Certificate was likely generated by its concern that the facility might be considered to be a mental health facility. Mental health facilities, in general, are not classified by the Ordinance and, therefore, require a ruling by the zoning enforcement officer as to classification. Depending upon the particulars of the facility as finally proposed, the Ordinance might well require zoning relief in the form of a special use permit or variance.
The plaintiff's initial request came in the form of a letter from plaintiff's counsel. Letter from William C. Bowling, Plaintiff's Counselto Leo Perotta, Zoning Enforcement Officer (December 3, 1999). The letter lacked details concerning the proposed use and, instead, focused on plaintiff's legal arguments. The number of individuals who would occupy the premises and take part in the program was not disclosed. In fact, the letter failed to disclose that the plaintiff proposed any kind of a program at all. The letter made it appear that the plaintiff would own the property and would act as a mere landlord in leasing the apartment units to the mentally handicapped. The plaintiff submitted no building plans and no site plan with the letter. The letter argued that the proposed use would not constitute a Community Residence because of the lack of "family setting".[4] Plaintiff relied on that important fact to distinguish its program from a Community Residence. It also argued that the facility, due to its residential character, would not qualify as a mental health facility. The letter also contained an analysis of state and federal law concerning the handicapped.
The letter closed with the request that the zoning enforcement officer acknowledge the proposed use to be a continuation of the existing nonconforming use.
The zoning enforcement officer did not respond to the plaintiff's request for a Zoning Certificate. While his inaction is not surprising given the dearth of factual information contained in the request, the better course would have been for him to respond by saying that he could not issue a certificate without more information and was therefore denying the request. His lack of action added to the confusion in the travel of this case.
The plaintiff took the zoning enforcement officer's inaction as a denial and filed an appeal with the Zoning Board of Review. At a hearing on June 15, 2000 the Zoning Board dismissed the appeal on the grounds that the plaintiff had failed to submit proper plans to the building official. The plaintiff next secured a Writ of Mandamus from the Superior Court directing the Zoning Board of Review to hear the appeal and to render a decision thereon.
The Zoning Board heard the appeal on September 21 and October 19, 2000.
It was not until the initial hearing that the true nature of plaintiff's project became clear. During the hearing, plaintiff presented tentative building plans and presented testimony. By the substantial evidence, plaintiff proposed to make changes in the structure by reducing the number of apartments in 154 Obed from 12 to 10 and to create a common area or community room that would house a computer bank, a restroom and kitchenette that would be open to the public. (Tr. of September 21, 2000 at 5.) The setting was proposed as a professionally staffed and supervised residential facility for adults with severe and persistent mental illness. Id. at 15-16. By the substantial, reliable and probative evidence, plaintiff would not act as a mere landlord but would operate a residential program the purpose of which is to provide a supported living environment for individuals having bipolar disorders, major depression, schizophrenia or the like. Id. at 10. Some residents were anticipated to have secondary substance abuse problems or physical ailments and would need other support services. The program participants would be individuals and not families. Each program participant would occupy a self-contained and independent living unit, that is, an apartment unit having its own kitchen and bathroom facilities. Id. at 12. The residents would not live in a group or family setting. In other words, they would not share in common household chores such as cleaning and meal preparation. Nor would they share common kitchen, bath or living space except for the common room and computer bank that were also open to the public. Id. at 21.
The transcript of the hearings reflects considerable confusion on the part of plaintiff's representatives. During the initial hearing much was made of the plan for a HUD required community room and computer bank that would be open to the public. But, during the second hearing, they informed the Board that what they had earlier thought to be shown on the plans as a community room was instead a private conference room. (Tr. of October 19, 2000 at 3.) What had been earlier identified to the Board as the computer room turned out to be the boiler room. Id. at 4. And, none of the premises would be open to the public after all. Id. at 2. They seemed confused over precisely what was contained in plaintiff's HUD application and what requirements HUD might impose upon the project. Id. at 35. Plaintiff introduced no HUD regulations or applications at the time of the hearings and plaintiff's counsel acknowledged that he was not familiar with HUD requirements. (Tr. of September 1, 2000 at 36-37.) In one breath the plaintiff's representatives would rely on HUD regulations but in the next breath they would suggest that HUD was out of the picture because they had found alternative financing. Id. at 35. Between that and plaintiff's lack of commitment to a structural plan, it was clear from the evidence that there could be material differences between the project concept that plaintiff was presently proposing and the program and facility that would ultimately be developed. Indeed, the plaintiff made it plain that any changes to the structure as shown in the plans were only preliminary and might change. (Tr. of September 21, 2000 at 19.) Furthermore, the Board was left in the dark concerning the parameters of any requirements that HUD or other federal or state agencies could be expected to impose upon this project should it come to fruition.
During the hearings, the plaintiff's strategy for obtaining local land use regulation approvals became more apparent. First, plaintiff would obtain the Zoning Certificate based upon generalized concepts and limited factual information. Id. at 28. Thereafter, it would seek the building permits — no doubt by pointing to the Zoning Certificate as grounds to make whatever structural changes might be necessary to house the project concept. In keeping with that strategy, the plaintiff, during the hearings, went to great lengths to point out that it sought only a ruling on its appeal from the zoning official's de facto denial of its request for information and a concomitant ruling that the proposed use was a permitted one. (Tr. of September 21, 2000 at 17.) In other words, the plaintiff made it clear that proceedings before the Board were not to be taken as proceedings in the nature of a request for zoning relief. According to the plaintiff, the Superior Court had not required it to submit building plans and the only question before the Board was the zoning official's failure to issue a decision. Id. The plaintiff also made it clear that only after it received the Zoning Certificate would it file its final building plans and, if the plans were not approved, plaintiff would return to the Superior Court for that piece of it. Thus, the plaintiff's project would elude review as a whole and questions concerning the need for zoning relief might be avoided.
There was no direct evidence adduced during the hearings concerning whether or not the plaintiff's project would require licensing under G.L. 1956 § 40.1.24-1 et seq. The evidence, however, when considered in light of that Chapter's definition of Community Residence, does support the inference that the plaintiff's program would in fact be subject to the licensing requirements of G.L. 1956 § 40.1.24-1 etseq. True, the question of whether or not plaintiff's program is subject to the licensing requirements of G.L. 1956 § 40.1.24-1 et seq was not directly before the Board and is not before this justice. Nonetheless, the question of licensing requirements is relevant because the definitional sections of the ordinance in part define community residences by their licensing requirements. By referencing G.L. 1956 § 40.1.24-1 et seq in the definition of Community Residence, the drafters of G.L. 1956 § 45-24-31(15) and the Town of North Providence Zoning Ordinance clearly evidenced their intent to distinguish between larger public or semi-public institutions such as hospitals and clinics and between small, private facilities that are essentially residential in nature with the occupants living in a family type setting. The former, hospitals and clinics, are permitted only by special exception and are subject to different parking regulations and other conditions as may be required by the zoning board under its powers to grant a special exception. North Providence Zoning Ordinance, § 203. The latter, community residences, are permitted under the same terms and conditions as all residential dwellings housing persons living in a family setting and who are typically linked by blood, marriage or other legal ties. It was clearly to create a brighter line between the larger institutions and community residences, that the drafters of the Ordinance referred to G.L. 1956 § 40.1.-24-1 et seq. when they set out to define Community Residences. Plainly, it was their overall intent was to permit public and private institutions to operate community based programs for the disabled and handicapped in residential neighborhoods while ensuring that those programs remained compatible with and in keeping with the character of a residential neighborhood. North Providence Zoning Ordinance, Art. XIII,Definitions. The lack of information concerning licensing requirements only enhanced the uncertainty about the true nature of plaintiff's proposal and where along the Ordinance's continuum of residential and institutional uses it might fall.
After hearing the testimony presented to the Zoning Board of Review, after having an opportunity to examine the plans submitted at the hearing and after inspecting other facilities operated by the plaintiff, the zoning enforcement officer apparently believed he now had sufficient information to make a determination on the plaintiff's original request. He made a written determination on November 30, 2000. Letter from LeoPerratta, Zoning Enforcement Officer to Gateway Healthcare, Inc.(November 30, 2000). He approached his consideration of the two structures separately and he determined that the proposed use for the 6-unit structure located at 156 Obed would be permitted by the Ordinance as a Title 40.1 Chapter 24 licensed Community Residence.
The zoning enforcement officer further determined that the proposed use for the premises known as 154 Obed would not permitted under the Ordinance. He specifically pointed to the Ordinance's definition of Community Residences which, depending upon the specific nature of the program, clearly places an outside limit on the number of occupants or participants to eight. Id. Then, in keeping with his powers under Article II, Section 203(O) of the Ordinance, the zoning officer determined that the structure at 154 Obed, the larger structure, would best classified as a mental health facility or unclassified use. Id. He also determined that the former would require Zoning Board approval as to use and that the latter would require a variance as to the limitation on the number of occupants. Id. The alternative nature of his determination seems, clearly, a response to the plaintiff's lack of commitment to a building plan, the lack of definitive information about the program and the confusion concerning what conditions or stipulations might be required by potential financing and licensing authorities.
Thus, the zoning enforcement officer granted in part and denied in part the plaintiff's request for a Zoning Certificate and advised the plaintiff of the nature of his reasoning and concerns.
On November 30, 2000 the Board convened to give an oral decision on the plaintiff's appeal. The Board directed the zoning enforcement officer to read into the record his written decision. The Board then went on to unanimously accept the zoning enforcement officer's belated response to the plaintiff's original request for information. The plaintiff objected and pressed the Board to rule on its appeal. The Board responded that the effect of plaintiff's request to the Superior Court had been to mandate a response from the zoning enforcement officer and that the plaintiff now had that. (Tr. of November 30, 2000 at 5-6.) One of the Board members commented on the reasonableness of the zoning enforcement officer's delay in responding to the plaintiff's initial request for a Zoning Certificate. Presumably, he was alluding to the fact that plaintiff had not provided the zoning enforcement officer or the Board with the proper information until the second round of hearings in September and October of 2000. The Board then went on to adopt the zoning enforcement officer's reasoning and decision. Id. at 6.
The Town Clerk of the Town of North Providence recorded the Board's written decision on February 6, 2001. The decision included the Board's factual findings and stated the Board's concurrence with the zoning enforcement officer's decision. The Board went on to opine that the proposal for the 10 unit building located at 154 Obed Avenue would not comply with the North Providence Zoning Ordinance and that is would best be classified as a mental health facility or an unclassified use requiring Zoning Board approval or would require a variance to exceed the limits as outlined by the Ordinance. The plaintiff now had the information it sought in requesting the certificate and had it in writing.
The plaintiff filed a timely appeal to this Court. The plaintiff seeks a reversal of the Board's decision and seeks what would amount to a declaration from this Court that its proposed use will amount to a legal non-conforming use of the premises. The plaintiff contends that its future use of the property will be no different than the existing use. The only dissimilarity will be in the mental status of the occupants or participants. Plaintiff disputes that its program will within the Ordinance's definitions of community residence and contends that the facility is not in the nature of a mental health facility. Plaintiff does not perceive the proposed use to be an unclassified use. It is the plaintiff's contention that the facts show the proposed use to be no different than the existing and garden-variety apartment complex. Plaintiff contends that the Zoning Board is attempting to put an institutional label on a residential use.
 Standard of Review 
The standard of review for this Court's appellate consideration of the Zoning Board decision is articulated in G.L. 1956 § 45-24-69(D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd.of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979));Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v.Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981). A remand is appropriate in this situation because it serves as a
 "safety valve, permitting the reviewing court to require a second look at situations and conditions which might not warrant reversal, but which, to the court reviewing the record, would indicate to it that the . . . [agency] may have acted on incomplete or inadequate information; or may have failed to give adequate consideration to an alternate route . . . A remand for further consideration is not a determination that the [agency] is wrong; but it is an indication that the disinterested court, which has reviewed the record is not satisfied on the basis of that record that the [agency] is right." Johnson Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 816 (R.I. 2000) (Flanders, J., concurring in part and dissenting in part) (citing Lemoine v. Dept. of Mental Retardation and Hospitals, 320 A.2d 611, 615, 113 R.I. 285, 291 (R.I. 1974)) (Citations omitted).
 Analysis 
Notwithstanding the lack of clarity concerning the details of the plaintiff's proposed program, the substantial, reliable and probative evidence in the record is that the plaintiff, a mental health service provider, proposes to operate a community-based residential facility for approximately 16 severely mentally handicapped adults; that the facility will consist of two multifamily dwelling structures; that the program participants will not, as a group, live in a family setting; and that they will live separately, each within his or her own dwelling unit, and will live semi-independently with assistance, training and guidance from a shared source. There is not one scintilla of evidence to the contrary.
Given the evidence, it is clear that both the zoning enforcement officer and the Zoning Board erred, as a matter of law, in determining that the plaintiff's proposed project would be governed by the Ordinance's provisions governing Community Residences. The substantial, reliable and probative evidence is that the program will not meet the definitional criteria of Community Residence due to the lack of family setting and the number of participants. G.L. 1956 § 45-24-31 (15);North Providence Zoning Ordinance, Art. XIII, Definitions. It is also clear that the zoning enforcement officer and the Zoning Board erred, as a matter of law, when they treated the proposed use of the premises as two separate uses controlled by differing provisions of the Zoning Ordinance. For these reasons, the decision of the Board must be reversed.
The larger question, however, is whether the plaintiff is entitled to an advisory Zoning Certificate confirming its proposed use to be a continuation of the existing non-conforming use. It is this Court's conclusion that the plaintiff is not so entitled and that neither the zoning enforcement officer nor the Zoning Board erred in refusing to issue such a certificate.
The substantial, reliable and probative evidence before the Board was that the premises would not be put to a general residential use but instead would be used to house a professionally-run and staffed mental health based residential program. There is not a scintilla of evidence to the contrary. Though the setting would have a residential quality to it, the core program is an integral part of the project and its institutional characteristics cannot be ignored. The substantial, reliable and probative evidence in the record is that the use to which the property will be put is one in which approximately 16 handicapped individuals will occupy attached apartment dwelling units contained in 2 structures comprising a single facility. The nucleus of the facility is a program designed to provide assistance and training in basic daily living. The program participant-occupants who reside in the facility, whether temporarily or long-term, are subject to 24-hour day assistance and supervision from professionally trained staff members. The substantial, reliable and probative evidence also demonstrates that the program and facility might well be subject to the licensing provisions of G.L. 1956 § 40.1.24-1 et seq. as an apartment program or living arrangement which is established, offered, maintained, conducted, managed or operated to provide a semi-independent living program. Therefore, neither the Board nor the zoning officer erred in refusing to provide the plaintiff with a Zoning Certificate advising that the proposed use would amount to a continuation of the existing non-conforming use.
A review of the North Providence Zoning Ordinance reveals that regardless of the nature of the program participants' disabilities, a facility such as that proposed by plaintiff is not specifically listed as a permitted use in any district. Generally, plaintiff's program facility is most accurately characterized as a mental health based, assisted living residential program and not as a hospital, clinic or Community Residence as defined by the Ordinance. As such, plaintiff is entitled to a Zoning Certificate confirming that (1) the existing use of the property as a multi-family general residence is a legal non-conforming use; (2) the existing dwelling units may be leased to any disabled person regardless of the nature of his or her disability; (3) the use to which plaintiff proposes the property be put is not permitted in the zoning district; (4) prior to using the premises as proposed, the plaintiff must apply for and obtain the appropriate zoning relief; and that (5) all relevant provisions of the Ordinance pertaining to use variances, special use permits and non-conformance will apply to any such application for zoning relief.
 Conclusion 
For the foregoing reasons, the plaintiff's appeal of the February 6, 2001 decision of the North Providence Zoning Board is granted and the matter is remanded to the Zoning Board and zoning enforcement officer for issuance of a Zoning Certificate consistent with this decision.
[1] For purposes of this decision, this justice will assume each structure to have existed prior to September 8, 1959 or that they are lawful non-conforming uses for other reasons. North Providence ZoningOrdinance, § 402.
[2] It is this justice's observation that requests for information and zoning certificates can be somewhat inappropriate when, as in the instant case, the use is merely a proposed use and not one currently in existence. If some of the important details have been left out of the request or if the proposed use or structure changes in any way, the zoning officer's response might well prove to be incorrect. Plainly, anyone relying upon information or a certificate concerning a use not yet in existence assumes the risk that the information or certificate is erroneously given.
[3] The Ordinance's definition includes two other types of facilities but those are not implicated by the facts of this case.
[4] Both G.L. 1956 § 45-24-31 (15) and the Ordinance anticipate that the occupant-participants in a Community Residence will live in a family-type arrangement.