[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is an appeal from the decision of the Town of North Kingstown Zoning Board of Review granting defendant Stephen Michael's applications for a special use permit and a dimensional variance. Jurisdiction is pursuant to R.I.G.L. 1956 § 45-24-69. For the reasons set forth herein, the decision of the Zoning Board is affirmed.
 FACTS
The property at issue, located at Top Hill Street in North Kingstown, is owned by the defendant Stephen Michael. More specifically described as Assessor's Plat 41, Lot 91, the parcel is zoned residential. The parcel consists of approximately 1,230 square feet. It is a substandard lot of record, predating modern zoning in North Kingstown. The parcel is currently unimproved, substandard as to frontage and without access to town sewers.
Mr. Michael seeks to build a two bedroom single family dwelling on his lot. He obtained a permit for an Individual Sewage Design System (ISDS) from the Rhode Island Department of Environmental Management (DEM), and sought relief from the North Kingstown Zoning Board of Review. Mr. Michael applied to the Board for a special use permit, allowing him to construct the dwelling on a substandard lot. He also requested a dimensional variance to allow location of an ISDS within 150 feet of a wetland.
Mr. Michael filed his special use permit application in May 2003. He subsequently amended the application to include his request for a variance from the ISDS setback requirements. The Board first received testimony concerning the matter at a hearing conducted July 8, 2003.
At the initial hearing, Mr. Michael offered expert testimony from Donald Jackson, a professional land surveyor. Mr. Jackson's testimony addressed, among other matters, the soil investigations and topographic surveys he performed on the property in connection with Mr. Michael's ISDS permit application. The Board admitted the approved ISDS plan as an exhibit at the hearing. Mr. Jackson testified the ISDS will not adversely impact the town's drinking water, and that the lot is not located in a ground water drinking area. Mr. Jackson also addressed the issue of ground water runoff. He asserted that newly constructed swales will divert any runoff from the lot and contain it on Mr. Michael's property.
Mr. Michael also testified at the initial hearing. He asserted sufficient off-street parking exists on the lot to accommodate two or three vehicles, that no signage would be erected, and there would be no excessive light emanating from the house. Mr. Michael also represented to the Board that he submitted plans for the property to the North Kingstown Planning Department, which had confirmed compliance with applicable setbacks. The Board also accepted a Planning Department staff report, recommending approval of the application, into evidence.
Subsequent to the July 8, 2003 hearing, the Board continued the matter on three occasions, allowing Mr. Michael to prepare architectural plans for the lot. On March 23, 2004, the Board returned to the matter. At this hearing Mr. Michael completed his presentation. In his testimony he indicated his intention to reside in the home upon completion. At this time Mr. Michael amended his application to request a dimensional variance for the ISDS.
At the March 23, 2004 hearing, the Board received testimony from several of the Plaintiff Neighbors, who appeared with counsel. These Neighbors, Joseph DiLorenzo, Marilyn Kelly and Nicholas and Kathleen VanNoort, raised two objections. The first, raised by Mr. DiLorenzo and Mrs. Kelly, concerned runoff from Mr. Michael's lot. They testified to excessive runoff from Mr. Michael's lot and flooding on their properties. The next issue, raised by Mr. and Mrs. VanNoort concerned Mr. Michael's intentions for the property. The VanNoorts testified to their observation of a for sale sign on the lot and their knowledge of an $80,000 asking price. The Board made no further inquiry to Mr. Michael concerning either objection raised by the Neighbors at the hearing.
The Board approved Mr. Michael's application in a written decision issued April 13, 2004. The Neighbors' timely appeal is now before this Court.
 STANDARD
This Court's review of the Zoning Board's decision is governed by G.L. 1956 § 45-24-69(D) which provides that:
 [t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 1. In violation of constitutional, statutory, or ordinance provisions;
 2. In excess of the authority granted to the zoning board of review by statute or ordinance;
3. Made upon unlawful procedure;
4. Affected by other error of law;
 5. Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 6. Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a zoning board decision, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Board ofReview of Newport, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v.Zoning Board of Warwick, 122 R.I. 241, 245; 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501,508; 388 A.2d 821, 824-25 (1978)). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Association v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Association of Firefighters, AFL-CIO, Local 1589,119 R.I. 506, 508; 380 A.2d 521, 522 (1977)). This Court should exercise restraint in substituting its judgment for the Zoning Board and is compelled to uphold the Zoning Board's decision if the court conscientiously finds that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260
(R.I. 1985) (citing Apostolou, 120 R.I. at 507; 388 A.2d at 825).
When seeking a dimensional variance, the applicant bears the burden of production and persuasion as to why such relief is warranted. DiIorio v.Zoning Bd. of Review of East Providence, 105 R.I. 357, 362, 252 A.2d 350,353 (1969). Section 45-24-41 governs dimensional variances, requiring the applicant to prove the following elements:
 (1) that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
. . .
 (d) (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. Section 45-24-41(c).
The showing necessary to obtain a dimensional variance is that the landowner would suffer an adverse impact amounting to more than a mere inconvenience. Felicio v. Fleury, 557 A.2d 480, 482 (R.I. 1989) (citingGara Realty, Inc., 523 A.2d 855, 858 (R.I. 1987); De Stefano v. ZoningBd. of Review, 122 R.I. 241, 246, 405 A.2d 1167, 1170 (1979). When determining the propriety of a zoning board's grant of a dimensional variance "this test must be applied reasonably and realistically."Travers v. Zoning Bd. of Review of Bristol, 101 R.I. 510, 514,225 A.2d 222, 224 (1967). The hardship, however, must not stem "from the desire of the applicant to realize greater financial gain," R.I.G.L. 1956 § 45-24-41(c)(2). Further, an applicant must show "more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience." H.J. Bernard Realty Co., Inc. v. Zoning Board of Reviewof the Town of Coventry, 96 R.I. 390, 394, 192 A.2d 8, 11 (1963).
 ANALYSIS
Substantial Competent Evidence
The Neighbors first argue Mr. Michael did not present sufficient evidence to the Board which would support each facet of the applicable sections of the North Kingstown Zoning Ordinance. Section 21-15 of the Ordinance provides procedures for granting special use permits.[1]
Section 21-14. governs applications for variances.[2] The Neighbors specifically maintain that Mr. Michael failed to adequately address their concerns as to runoff and flooding in contravention of § 21-15(a)(5).
Mr. Michael argues the Zoning Board's decision is supported by substantial competent evidence. He maintains the Board properly accepted the testimony of Mr. Jackson concerning runoff and the ISDS. The Town of North Kingstown similarly argues that the Board's decision is supported by substantial evidence. The Town contends Mr. Jackson's testimony consistently and thoroughly addressed the issue of runoff. It asserts that the Town's Planning and Engineering Departments both reviewed and approved Mr. Michael's plans for the lot, and notes one criterion for Planning Department approval is finding that zero increase in runoff will occur.
Section 21-15(a)(5) requires the Board to enter evidence into the record of the proceedings satisfactory to demonstrate that "[s]ewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site." Mr. Jackson's expert testimony to that effect, the Planning Department report were both entered into the record. Accordingly, this Court concludes the Board's decision complied with the requirements of § 21-15(a)(5).
The Neighbors additionally argue that Mr. Michael offered no explanation of the "for sale" sign or the apparent real estate listing. This, they maintain, suggests his primary motivation to seek a variance is financial gain, in contravention of § 21-14(a)(2). Mr. Michael replies that the issue of the dwelling's occupancy is irrelevant, and falls outside the jurisdiction of both the Zoning Board and this Court. The Town asserts denial of the variance would have amounted to more than a mere inconvenience to Mr. Michael, denying him any and all beneficial use of the property.
Section 21-14(a)(2) requires the Board to determine that the applicant's "hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." By its own terms, the section does not foreclose the possibility that financial gain might occur if the variance were granted. Otherwise, the word "primarily" would be unnecessary. Indeed, most variances are likely to confer some financial benefit upon the property owner when granted. The prohibition set forth in § 21-14(a)(2) concerns whether the alleged hardship itself is a desire for financial gain or a self-created need, not whether some financial benefit might possibly accrue to the applicant.
Here, Mr. Michael owns a nonconforming lot of record in a residential zone. Absent the requested relief, Mr. Michael has no beneficial use for the property. The Board expressly determined the hardship from which Mr. Michael sought relief was "due to the unique characteristics of the subject parcel of land," not any prior action of Mr. Michael, nor from his desire to realize greater financial gain. Accordingly, this Court concludes the Board's decision satisfies the requirements set forth in Section 21-14(a)(2)
Sufficiency of the Decision
The Neighbor's next challenge the sufficiency of the written decision issued by the North Kingstown Zoning Board of Review. Specifically, they argue, the Board articulated no findings of fact or conclusions of law in support of its decision. The Town replies that the Board made the requisite findings of fact supported by the record, and based its legal conclusions upon the same. The Town maintains the Board complied with all procedural requirements, issuing a decision properly reviewable by this Court.
The Neighbors correctly note that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Thorpe et al. v. Zoning Board of Review Of the Town Of NorthKingstown et al., 492 A.2d 1236 (R.I. 1985). The "[M]inimal requirements for a decision of a zoning board of review [are] findings of fact and 
application of legal principles in such a manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the zoning ordinance applied." Id.
The Town of North Kingstown Zoning Board of Review granted Mr. Michael's applications for a special use permit and a dimensional variance in a written decision issued on April 13, 2004. In its decision, the Board identified the property involved, the relief sought and its members voting on the application. It then identified documents or other materials submitted in support of, or opposition to, the applications. The Board specifically described the conditions to the relief granted. The Board listed sections of the General Laws applicable to Mr. Michael's petition for relief. Finally, the Board enumerated "findings" specific to the special use permit application and the dimensional variance application.
Arguing the Board merely made a passing reference to the appropriate sections of the ordinances, without findings of fact or accompanying conclusions of law, the Neighbors essentially challenge the form of the Board's decision. This Court recognizes the Board's decision does not neatly separate and identify its findings of fact and conclusions of law. It is clear, however, that the enumerated "findings" of the Board contain both findings of fact and conclusions of law. It is also readily apparent that these findings of fact and conclusions of law are directed towards the requirements for the requested relief, which are set forth in the sections of the Ordinance cited earlier in the decision.
Treatment of the runoff issue in the decision, sheds some light on the Board's fact-finding and deliberative process. The enumerated "findings" directed towards the special use permit address the issue with one rather conclusory sentence, stating "the location of the proposed house in accordance with the approved development plan will not alter the existing stormwater drainage pattern in the area."
Standing alone, as the Neighbors imply it does, that sentence is insufficient to convey findings of fact and conclusions of law. However, the sentence does not stand alone. This Court must consider that sentence in light of the record submitted by the Board and incorporated into its decision. The sentence itself references Planning Department approval. That approval is contained in a staff report, which is incorporated in the decision. The hearing transcripts are similarly incorporated, and include the expert testimony of Donald Jackson regarding runoff.
Explicit findings of fact and express legal conclusions based thereupon significantly assist this Court's analysis upon review. Here, such findings and conclusions were inartfully drafted, requiring this Court to review of the whole record to verify that the Board did indeed credit particular testimony and evidence. However, the Board's intent and analysis are clear from the record and supported by sufficient findings of fact and legal conclusions. Accordingly, because this Court concludes the decision issued by the Board is sufficiently reviewable, and remand for further findings is unnecessary.
 CONCLUSION
For the reasons set forth herein, the Neighbor's appeal is denied. Counsel shall submit appropriate orders.
[1] North Kingstown Zoning Ordinance
Sec. 21-15. Additional procedures for special use permits and special permits.
 (a) In granting a special use permit or special permit under this chapter, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) The requested special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan upon which this chapter is based.
 (2) The special use permit is reasonably necessary to serve the public convenience and welfare.
 (3) The granting of a special use permit will not pose a threat to the drinking water supply.
 (4) The use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollutants.
 (5) Sewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site.
 (6) The traffic generated by the proposed use will not cause undue congestion or introduce a traffic hazard to the circulation pattern of the area.
 (7) Accessory signs, off-street parking and loading area and outdoor lighting are designed and located in a manner which complements the character of the neighborhood.
 (8) In addition to the criteria in subsections (1) through (7) of this section, in the case of a special permit, the board shall require evidence that the requested use will have a lesser undesirable impact upon the surrounding area than the preceding nonconforming use.
 (b) Special use permits and dimensional variances.
The zoning board of review may issue a dimensional variance in conjunction with a special use. If the special use could not exist without the dimensional variance, the zoning board of review shall consider the special use permit and the dimensional variance together to determine if granting the special use is appropriate based on both the special use criteria and the dimensional variance evidentiary standards.
(Ord. No. 94-12, § 1, 6-27-1994; Ord. No. 02-14, § 2, 10-7-2002)
[2] Sec. 21-14. Additional procedures for variances.
 (a) Criteria for grant of variance. In granting a variance to this chapter, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area, and is not due to a physical or economic disability of the applicant.
 (2) The hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 (3) The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan upon which this chapter is based.
 (4) The relief to be granted is the least relief necessary.
 (b) Evidence required for grant of variance. The zoning board of review shall, in addition to the standards in subsection (a) of this section, require that evidence be entered into the record of the proceedings showing that:
 (1) In granting a use variance, the subject land or structure cannot yield any beneficial use if it is required to conform to the land use sections of this chapter. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance; and
 (2) In granting a dimensional variance, the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief.