[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is an appeal from the decision of Defendant Zoning Board of Review of the Town of Hopkinton ("Zoning Board" or "Board") denying Plaintiff Joseph A. Morrone's ("Morrone") application for a special use permit. Defendant Kenneth Panciera ("Panciera"), the principal objector, appeared through counsel at the Zoning Board's hearing underlying this appeal. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND PROCEDURE
Mr. Morrone owns approximately 73 acres of real property located in Hopkinton, described as Lots 7 and 7C on Hopkinton Tax Assessor's Map 3 ("the property"). The property is located in an RFR-80 (rural, farming, residential) zone as defined by the Hopkinton Zoning Ordinance ("the ordinance"). He seeks a special use permit to expand the operation of an existing gravel bank on the property.
Mr. Morrone's business consists of hauling sand and gravel for contractors, builders and construction companies, as well as leasing his equipment to other truckers. He purchased the property, which was advertised for sale as having a gravel bank with an entrance on a state road, for the purpose of extracting gravel.
Gravel extraction is not permitted in an RFR-80 zone. Mr. Morrone needs a special use permit to extract gravel from the property. Mr. Morrone presented evidence, and the Board found, that the existing gravel bank on the property, established in the 1960's by a previous owner, constitutes a preexisting non-conforming use. The ordinance permits expansion, enlargement or intensification of non-conforming use if the criteria for a special use permit are satisfied.[1]
Mr. Morrone applied for the special use permit in October, 1999. Over the course of several hearings, the Board took testimony and evidence relative to Mr. Morrone's application. Mr. Morrone, his representatives and experts outlined a two phase plan for gravel extraction and proposed a course of action designed to alleviate concerns of, and minimize impact upon, his neighbors. Several local objectors noted their concerns, including traffic, dust, perceived dangers to children, noise and decline in property values. An expert retained by Mr. Panciera disputed evidence of the existing gravel bank's recent activity and suggested the possibility of detrimental environmental impact.
The Board effectively denied Mr. Morrone's application on May 2, 2000, recording their decision with the Hopkinton town clerk on July 18, 2000.[2] Subsequently, Mr. Morrone filed this timely appeal which is opposed by the Board and intervener Panciera, a direct abutter to the subject property.
 STANDARD OF REVIEW
This Court's review of the Zoning Board's decision is governed by G.L. 1956 § 45-24-69(D) which provides that:
 [t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 1. In violation of constitutional, statutory, or ordinance provisions;
 2. In excess of the authority granted to the zoning board of review by statute or ordinance;
 3. Made upon unlawful procedure;
 4. Affected by other error of law;
 5. Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 6. Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a zoning board decision, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Board ofReview of Newport, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v.Zoning Board of Warwick, 122 R.I. 241, 245; 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501,508; 388 A.2d 821, 824-25 (1978)). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Association v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Association of Firefighters, AFL-CIO, Local 1589,119 R.I. 506, 508; 380 A.2d 521, 522 (1977)). This Court should exercise restraint in substituting its judgment for the Zoning Board and is compelled to uphold the Zoning Board's decision if the court conscientiously finds that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260
(R.I. 1985) (citing Apostolou, at 507; 825).
 ANALYSIS
Mr. Morrone avers that the board's denial of his application is not supported by substantial evidence. He characterizes the expert testimony relied upon by the two board members responsible for denial of his application as "speculative and otherwise incompetent." Additionally, Mr. Morrone contends expansion or intensification of the gravel bank by special use permit will not harm the health, safety or welfare of the town or neighbors.
The Zoning Board Decision[3]
In its written decision, the Board first set forth findings that Mr. Morrone did not establish, with competent and substantial evidence, a preexisting use as a commercial sand and gravel operation. The Board specified the type of evidence upon which they might determine such a preexisting commercial gravel extraction operation existed, and noted that none was presented. The preexisting gravel operation, the Board concluded, is and was insignificant in size and only incidental to farming, the primary use of the property.
Next, considering Mr. Morrone's application for the special use permit, the Board found the requirements set forth in Section 10 to be unfulfilled. The Board listed the evidence upon which it made its determination. The Board indicated belief and acceptance of the testimony of Kuhn as to noise levels of the gravel operation, of McGovern as to impact on the neighborhood, and of LeBlanc as to surface and ground water patterns.
Concerning Kuhn's testimony, the Board credited his characterization of the property being in a quiet area. The Board considered Kuhn's decibel measurements, and noted their concern that: as Kuhn conceded, the background decibel level he used to determine the noise impact of the proposed machinery was higher than that normally found in the area during the day; and more importantly, Kuhn's decibel measurements gauged the noise impact of only two machines, where the use of several more machines was proposed. The additional equipment includes a screening plant that Kuhn admitted would register a much higher noise level.
The Board considered Kuhn's noise measurements in concert with McGovern's characterization of gravel banks as "noisy, smoky, dirty and dusty," which he based on his real estate appraisal experience, specifically his appraisal experience concerning gravel banks. McGovern also testified that, in his opinion, a commercial gravel operation on Morrone's property would depress surrounding property values, this despite any and all of Morrone's proposed remedial measures.
The Board also credited LeBlanc's testimony predicting a commercial gravel operation would alter surface and ground water patterns. Specifically, LeBlanc raised concerns about an intermittent stream on the property. The stream, he maintained, already showed effects from the existing small scale gravel operation, namely an excess of sand and gravel washed into the stream bed. The Board considered such alteration detrimental.
The sum and tenor of testimony and evidence credited by the Board led them to conclude that issuance of a special use permit was incompatible with orderly growth and development of the town. Accordingly, the criteria for granting a special use permit pursuant to Section 10 were unsatisfied.
The Board next addressed criteria set forth in Section 8 which imposes the additional burden, if all criteria of Section 10 are satisfied, of showing the proposed use more closely adheres to the intent and purpose of the zoning ordinance than the present use. The board noted the present use of the property consists primarily of farming. The Board characterized the existing gravel operation as sporadic, insignificant and incidental to farming. Accordingly the Board determined that the expansion/intensification of the existing sand and gravel operation in an RFR-80 zone to a commercial gravel operation would not more closely adhere to the intent an purpose of the zoning ordinance than the present use.
Arguments
Mr. Morrone first contends that denial of his application is not supported by substantial evidence. Specifically, he challenges the testimony of LeBlanc and McGovern. Leblanc's conclusions concerning surface and groundwater flows lacked proper foundation, he maintains, and McGovern's testimony lacked probative value. Hopkinton responds that under the applicable evidentiary standard, the testimony of both LeBlanc and McGovern was probative in nature and properly considered by the Board.
Mr. Morrone maintains that Mr. LeBlanc offered only bottom line conclusions based upon nothing more than his credentials. Specifically, Mr. Morrone notes that Mr. LeBlanc performed no tests on the soil or water table at the site.
Hopkinton's response describes a solid factual basis upon which LeBlanc relied. This factual basis included LeBlanc's examination of technical materials contained in Morrone's application, including site grading diagrams and cross sections, his on-site investigation of the gravel bank and surrounding area, and his analysis of photographs provided by the Office of Statewide Planning.
Hopkinton also notes that Mr. Linqhist, the expert retained by Mr. Morrone similarly declined to conduct testing on the property. Furthermore, they argue, pursuant to Toohey v. Kilday, 415 A.2d 732, 734-35
(R.I. 1980), it is incumbent on the petitioner (Morrone) to present legally competent evidence to satisfy the standard for issuance of a special use permit.
Mr. Morrone also maintains that Mr. McGovern's testimony lacks probative value, arguing that it does not relate to the standard for granting a special use permit. Mr. Morrone maintains all conclusions reached by Mr. McGovern flow from a fundamentally flawed decision making process whereby Mr. McGovern will always conclude that nonconforming use, by definition, is inconsistent with neighboring uses. Hopkinton responds, arguing that McGovern provided an adequate factual basis for his opinions and that the issue of his general pre-dispositions toward non-conforming uses was adequately vetted prior to the Board's vote on the application.
Mr. Morrone next contends that expansion of the gravel bank will not harm the health safety or welfare of the town or surrounding properties. He argues that while much of the testimony adverse to his application failed to satisfy the substantial evidence test, the testimony presented on his behalf did. Further, he argues such favorable testimony, addressing environmental concerns, safety considerations, effect on neighboring properties, purposes of the comprehensive plan, and adherence to the intent of the zoning ordinance was sufficient to prove the health, safety or welfare of the town or surrounding properties would not be adversely affected. In response Hopkinton argues the Board's decision was based upon substantial evidence, and therefore the Superior Court is precluded from overturning the decision.
Discussion
Upon review of the record this Court determines the Board's decision to be supported by substantial evidence. "Substantial evidence," in this context is described as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Caswell v. GeorgeSherman Sand and Gravel Co., Inc., 424 A.2d 646,647 (R.I. 1981). The evidence presented by Mr. LeBlanc and Mr. McGovern was probative and relevant to the Board's consideration of Mr. Morrone's application. It was McGovern's expert opinion that a gravel bank would have a detrimental effect upon property values and the character of the surrounding neighborhood. It was Mr. LeBlanc's expert opinion that ground and surface water patterns would likely be affected. Mr. McGovern's credentials as a real estate expert, and the facts upon which he based his analysis were placed on the record. Similarly, Mr. LeBlanc's credentials and the facts upon which he relied in concluding that ground and surface water patterns would be affected were also placed on the record. These witnesses were properly qualified as experts, and the Board credited their testimony and aspects of Kuhn's in reaching their decision.
Mr. Morrone urges the Court to reject the testimony credited by the Board, and instead, accept the testimony offered by his experts. However, "[t]he reviewing court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Apostolou v. Genovesi, 120 R.I. 501, 388 A.2d 821 (1978). Where substantial evidence and qualified experts exist on both sides of the controversy the reviewing Justice must defer to the Board. See Mendonsav. Corey, 495 A.2d 257, 263 (R.I. 1985), and Over the course of several hearings, the Board had the opportunity to evaluate and assess the credibility of the witnesses presented, whereas this Court has not. For that reason, the Rhode Island Supreme Court recognizes the Board is in a better position to resolve the conflict than this Court. See Id.
Accordingly, this Court will not substitute its judgment for that of the Board.
 CONCLUSION
In light of the competent evidence adduced before it, the Board's denial of Mr. Morrone's application for a special use permit to expand or intensify the existing gravel bank was supported by reliable, probative and substantial evidence of the whole record. The decision of the Board is affirmed. Counsel may submit appropriate judgments and orders.
[1] Section 8(C) of the Town of Hopkinton Zoning Ordinance declares "[t]he addition, enlargement, expansion, replacement or intensification of a nonconforming development shall be allowed only by special use permit."
Section 10(D) of the ordinance sets forth the Zoning Board's criteria for granting special use permits. In granting a special use permit, the board shall be "satisfied by legally competent evidence that the proposed uses and/or structure:
 (1) Will be compatible with the neighboring uses and will not adversely affect the surrounding neighbors' use and enjoyment of their property;
 (2) Will be environmentally compatible with neighboring properties and the protection of property values;
 (3) Will be compatible with the orderly growth and development of the town, and will not be environmentally detrimental therewith;
 (4) That all best practices and procedures to minimize the possibility of any adverse effects on neighboring property, the town, and the environment have been considered and will be employed, including but not limited to considerations of soil erosion, water supply protection, septic disposal, wetland protection, traffic limitation, safety and circulation; and
 (5) That the purposes of this ordinance, and as set forth in the comprehensive plan, shall be served by said special use permit."
In addition to the requirements set forth above, Section 8(D) of the ordinance requires the applicant to demonstrate to the satisfaction of the zoning board, by legally competent evidence, that the proposed use more closely adheres to the intent and purposes of the zoning ordinance than the present nonconforming development.
[2] The Board voted to approve the special use permit by a three to two majority. However, a four to one supermajority was required pursuant to G.L. 1956 § 45-24-19.
[3] The decision of the Board denying Mr. Morrone's application, filed with the Hopkinton town clerk on July 18, 2000, consists of two decisions, with both votes held the same evening. Decision # 1 concerns the motion to deny the special use permit. Board member Peter Stevens made the motion to deny, seconded by Board member Howard Schaffer. The motion to deny contains specific findings and conclusions supporting denial of the special use permit. The motion failed by a vote of three to two, with Messrs. Stevens and Schaffer voting in favor.
Decision # 2 concerns the motion to approve the special use permit. Board member Anthony D'Agnenica made the motion, seconded by Board member Thurman Silks. Board Chairman Jeffrey Gilman voted with Messrs. Silks and D'Agnenica to approve the motion, the resulting vote being three to two in favor of granting Mr. Morrone's application. The motion failed however, because those in favor of granting the special use permit failed to attain the super-majority required for approval. The failure of the motion to approve, as outlined in Decision # 2, effectively denied Mr. Morrone's application. This Court reads those findings and conclusions proposed in the motion to deny, as outlined in Decision # 1, as findings and conclusions relied upon by Messrs. D'Agnenica and Silks in effecting the denial of Mr. Morrone's application.