DECISION
Before the Court is an appeal of a decision of the Zoning Board of Review of the City of Newport (Board). Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The property in question is located on Goat Island in the Waterfront Business District and is divided into Lots 1, 2 and 3 of Tax Assessor's Plat 46, on the Newport Tax Assessor's map. American Condominium Association (appellant) appealed to the Board after the Zoning Enforcement Officer (Mr. Weston), per request of the appellant, determined that parking on lots 1, 2, and 3 was in compliance with the zoning code.[1] (President Morrissette's request letter Ex. W; see also Mr. Weston Dec. Ex. AA.) Mr. Weston found that lot 1, which contains residential housing and a clambake restaurant, required 297 parking spaces with 471 available.[2] Furthermore, Mr. Weston determined that lot 2, which contains a hotel, required 419 spaces with 435 available. Finally, Mr. Weston's calculations indicated that lot 3, which contains a marina, required 148 spaces with that number readily available. Id. The appellant appealed Mr. Weston's determination to the Board, now seeking reversal of the Board's decision upholding Mr. Weston's decision.
The Board heard the appeal on April 27, 1998 and November 23, 1998. At the hearing, several witnesses testified. The Board heard testimony from Mr. Weston, who testified concerning his calculations on the individual parcels. A civil and professional engineer, Mr. Baron, also testified in regards to his disagreement with the decision of Mr. Weston. Mr. Morrissette, the president of the American Condominium Association, testified as well; however because his testimony was not developed in any meaningful way, the Board was limited to a review of his October 13, 1997 letter setting forth an analysis of Goat Island Parking. (Ex. W.) On April 13, 1999, the Board recorded its decision denying the merits of the appeal. In doing so, the Board found that parking complied with the Newport zoning ordinance on all 3 of the aforementioned lots by making reference to facts adduced in the record. (Decision of April 13, 1999.) Both parties have briefed this Court on the appeal at bar.
 Standard of Review
This Court's appellate jurisdiction of zoning board of review decisions is pursuant to G.L. 1956 § 45-24-69(D), which states:
 "(D) The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The [C]ourt may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." § 45-24-69(D).
When reviewing the decision of the Board, this Court must examine the entire certified record to determine whether substantial evidence exists to support its findings. Salve Regina College v. Zoning Board of Review,594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion [and] to accept or reject the evidence presented. Bellevue Shopping Center v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the Board and is compelled to uphold the Board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 Sufficiency of Parking
Section 17.104.020 of the Newport Zoning Ordinance clearly sets forth the number of parking spaces that certain land uses are required to provide, based on factors such as number of employees and square footage.[3] Each lot relevant to this appeal contains a different land use and each lot is under separate ownership. Therefore, this appeal will deal with each lot separately.[4]
Lot 1 on Goat Island contains 154 residential condominiums, as well as a clambake restaurant. In fact, Mr. Weston testified that under the present zoning ordinance at the time of the hearing, 154 dwelling units would require double, or 308 parking spaces. (Tr. at 9.) Mr. Weston explained that based on his "on-site" inspection of the property, he had identified 589 off-street parking spaces and subtracted 118 from that figure based on an easement burdening the parcel. (Mr. Weston's decision Ex. AA; see also Easement Ex. E.) This calculation left Mr. Weston with 471 parking spaces, enough to accommodate the 308 spaces needed by the residential dwellings and the 50 spaces needed by the standard restaurant.[5] (Tr. at 8-14; see also Ex. AA.)
Mr. Baron, who was qualified as an expert and testified as such, opposed the determination made by Mr. Weston. Mr. Baron was of the opinion that based on density requirements in the Newport Zoning Ordinance (Section 17.56.070(C)), 770,000 feet of noncommercial land would be required for 154 dwelling units (5000 square feet for each dwelling unit). (Tr. at 71-72.) Consequently, this would mean that any square footage devoted to commercial parking could not be taken into account when satisfying the aforementioned density requirements. While this is the professional opinion of Mr. Baron, the appellants do not cite any authority for his proposition that mixed uses of land are not permitted to satisfy density requirements. "Mixed uses" for land are permitted in Newport. Section 17.56.070(C) does not promulgate that the required 5000 square feet for each dwelling unit must be of a noncommercial nature. Pursuant to the ordinance, mixed uses of land are contemplated and encouraged in Newport. Section 17.08.010(66) defines the term "mixed use" as "a mixture of land Uses within a Single Development, Building, or tract." Furthermore, the "Newport Comprehensive Land Use Plan" provides that in certain districts, including the Waterfront Business District, mixed uses "shall" be permitted. See Newport Comprehensive Land Use Plan, Land Use Element, Policy M, Recommendation 3. After hearing both sides of the argument, the Board decided that parking on lot 1 was sufficient to accommodate the 154 dwelling units as well as the clambake restaurant. Based upon the whole record, this finding was based on substantial evidence and cannot be deemed arbitrary or capricious.
Lot 2 on Goat Island contains the Double Tree Hotel with an accompanying convention center. Mr. Weston testified before the board that he calculated the hotel's parking requirements based upon a zoning decision in 1996 zoning decision which had already done so. (Tr. at 15; see also 1996 Decision of Board Ex. GG.) It is uncontroverted that the hotel alone would require 419 parking spaces. (Ex. AA, GG.) At issue before the Board was the nature of the hotel's accompanying convention center as either an accessory use to the hotel or an independent assembly use. If the convention center were classified as an assembly use, the 435 available parking spaces would not be sufficient. Conversely, a determination that the convention center was an accessory use would render the existing parking adequate. (Pl. Mem. at 8-9.) Mr. Weston testified that he had been involved in a number of cases where convention facilities were treated as accessory uses, and that it was his opinion and the opinion of the City that the convention center was an accessory use. (Tr. at 15-19.) Contrastingly, Mr. Baron testified that in his opinion, the convention center was an assembly area, but on cross-examination, he admitted that he had never visited the building and had never walked through it or taken the time to discover how many conventions were held there. (Tr. at 74-76; see also Goat Island Brochure Ex. X.)
Moreover, a 1996 decision of the Board had already determined the convention center to be an accessory use to the hotel. (Ex. GG.) Based upon the doctrine of administrative finality, it has not been shown that circumstances have changed to a point warranting a second determination on the issue. See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 810 (R.I. 2000) (preclusive effect of res judicata should apply to those decisions rendered when an administrative agency has acted in a quasi-judicial capacity).[6] After hearing both sides of the argument regarding lot 2, the Board decided that parking space was sufficient.
Lot 3 on Goat Island contains a marina.[7] Mr. Weston testified as to the source of his numbers concerning this lot at the hearing before the Board. (Tr. at 20.) In Mr. Weston's parking analysis, he explains that his calculation of 161 dock slips was based upon numbers he extracted from a memo, which was sent from William Leys to Bruce Bartlett in 1987. (Ex. AA; see also Bartlett memo Ex. DD.) At the hearing, the Board also accepted evidence of marina appraisals and marina brochures, which represented numbers differing from those of Mr. Weston. (Tr. at 56-57, 83.) The Board was also privy to information contained in a report by the Condominium Association President. (Ex. W.) However, after hearing all the evidence, the Board determined, based on substantial evidence in the record, that there was sufficient parking on lot 3.
Based on the decision of the Board and the whole record, it is evident that the Board's findings were factual and not merely conclusory. See Irish Partnership v. Rommel, 518 A.2d 356 (R.I. 1986). Furthermore, while Mr. Baron was qualified as an expert on parking, the Board is not obliged to accept the testimony of an expert if there is evidence of record that controverts the expert's opinion. See Restivo v. Lynch, 707 A.2d 663
(R.I. 1998). After hearing Mr. Baron's testimony, it is clear that the Board's conclusion to the contrary resulted "from an exercise of the Board's fact-finding power on legally competent evidence." Braun v. Zoning Board of Review of South Kingston, 99 R.I. 105, 206 A.2d 96
(1965).
 Conclusion
Therefore, after a review of the entire record, the Court finds that the Board's finding of sufficient parking was supported by the reliable, probative, and substantial evidence of record, and did not constitute an error of law. In addition, substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed. Counsel shall prepare the appropriate order after notice.
[1] Specifically, Section 17.104.020 of the Newport Zoning Code, which is entitled "Parking Space Standards." Also, The Zoning Enabling Act empowers the Board to hear appeals from an administrative officer "where it is alleged there is an error in any order, requirement, decision, or determination. . . ." G.L. § 45-24-57(A)(1).
[2] This calculation seems to be the subject of a great deal of debate. It appears that the number 297 is the sum of 247 and 50. (Tr. at 18.) Mr. Weston calculated that the residences required 247 spaces, and the restaurant required 50 spaces. Having clarified this fact, a brief analysis of this calculation is necessary. Section 17.104.020(B) of the Newport Zoning Ordinance requires 2 parking spaces for every "multifamily dwelling." Lot 1 contains 154 multifamily dwellings, which clearly would require 308 parking spaces under the ordinance. The number 247, as represented by Mr. Weston, was based on alleged grandfather rights. In any event, the appellants go to great lengths attempting to deny the existence of grandfather rights on this parcel. However, whether 154 dwellings requires 247 or 308 is completely insignificant for purposes of the present appeal. Indeed, either figure when subtracted from 471 represents an ample amount of parking spaces for the clambake restaurant.
[3] At this juncture, it is useful to note that the scope of the present appeal will not be as broad as the appellants submit. Specifically, the appellants attempt to utilize this Court as a forum for appealing a previous Superior Court decision. While it is not clear from appellant's brief, this Court suspects that appellants refer to American Condominium Association., Inc. v. IDC Inc., C.A. 99-232, April 2, 2001, Thunberg, J. Based on the law of the case doctrine, this Court will not hear an appeal on that previous decision. See Ferguson v. Marshall Contractors, Inc., 745 A.2d 147, 151 (R.I. 2000) (the law of the case doctrine precludes a later judge from disturbing the decision of an earlier judge). The appellant's proper remedy was an appeal to the Supreme Court. In addition, this Court will not entertain the appellant's grievance regarding an illegal subdivision on Goat Island. Nowhere in the record below is this issue raised or argued.
[4] The appellants seem to argue that this Court can somehow amalgamate the separate lots so as to create adequate parking for each parcel. However, a conforming lot cannot be created by merging two nonconforming lots unless both are under the same ownership. G.L. § 45-24-38; See Sako v. DelSesto, 688 A.2d 1296 (R.I. 1997) (lot held by husband jointly with wife did not merge with lots held by husband alone since they were not in common ownership).
[5] Section 17.104.020(H) of the Newport Zoning Ordinance states that standard restaurants must provide one space for every 150 square feet of customer service area.
[6] Appellants contend that this previous decision by the Board should not bind them due to a lack of notice. However, there has not been any evidence presented to this Court which would support that claim, nor were the briefs accompanied by any supporting documentation.
[7] Section 17.104.020(R) of the Zoning Ordinance requires that a marina provide one space for each boat and one space for each 1.2 employees located on the same lot.